YOUNT (UNITED STATES v.). See Case No. 16,784.

## Case No. 18,189.
### YOUQUA v. NIXON et al.
[Pet. C. C. 221.] [1]

Circuit Court, D. Pennsylvania. April Term, 1816.

CONTRACT TO DELIVER GOODS—BREACH—INABILITY TO PROCURE ARTICLE—DAMAGES.

1. Where the defendant contracted to deliver teas of the first quality, he is not excused from a performance of his undertaking, by proving that no such teas could be obtained at the market. He is answerable to the plaintiff in damages, ror the non-performance of such an agreement.

2. The defendant contracted to deliver a certain number of boxes of teas, of first chop, at stipulated prices;—a subsequent agreement to diminish the quantity and the price, does not excuse him for a violation of the contract as to quality.

[Cited in Cheongwo v. Jones, Case No. 2,638.]

3. How damages, for the delivery of teas of a quality inferior to those contracted for, are to be ascertained.

[Cited in Barrow v. Reab, 9 How. (50 U. S.) 371.]

This was an action on a Canton note, given by the defendants [Nixon and Walker] to the plaintiff. By the agreement of the plaintiff's counsel, the defendants were permitted to give in evidence, the breach of a contract entered into by the plaintiff, at the time this note was given; to deliver to the supercargoes of the defendants' ship, a certain number of chests of Young Hyson tea, of the first chop, at thirty-seven tales per pichol. It appeared, by the evidence of the supercargoes, that after the contract was made, and after the teas from the country had come in, the plaintiff told the supercargoes, that the teas of the denomination specified in the contract, which were then at market, were generally so indifferent, that he should not be able to procure the quantity agreed for; and proposed that they should take other teas, in lieu of the Young Hyson. This they refused, insisting upon the contract. They afterwards agreed, verbally, to reduce the quantity, and the plaintiff promised to select from the large quantity at market, such teas, as he would not be ashamed to put his chop upon. The teas which were delivered, were of three different qualities, for which the plaintiff charged forty, thirty-

---

[1] [Reported by Richard Peters, Jr., Esq.]

eight, and thirty-six tales the pichol; for the second quality, the plaintiff at first insisted on charging forty tale, but the supercargoes refused to allow it, and thirty-eight tale was at length agreed upon. The supercargoes knew, that the parcels delivered were of different qualities, but they declared, that they considered themselves in the plaintiff's power, and that they had no alternative, but to receive the teas, at the prices charged; in as much, as by the laws of the place, having secured with the plaintiff, they could not have obtained a clearance, but through his means. But they stated, that they made no express engagement to waive the original contract, nor did they intend so to do. The supercargoes stated, that although the quality of the Young Hyson tea, was generally indifferent, that season, yet the contract might have been complied with, by the plaintiff; but they considered, that his standing in the Hong, was not such as to enable him to do so. The teas were proved to have been of a very indifferent quality, when brought to Philadelphia. The best of them, were worth about sixty cents per pound; whilst teas of the first quality, sold from ninety to one hundred cents; the others would not sell at all, during the year they were imported; but after the embargo was laid, they were sold for seventy-five cents per pound.

The claim for damages for a breach of the contract, was resisted, upon the grounds, that the subsequent agreement, to diminish the quantity of tea mentioned in the contract, as well as the alteration in the price, amounted to a waiver of the original contract; and that the quality of tea mentioned in the contract, should be considered, as referable to the general state of the market.

Mr. Binney, for plaintiff.
Mr. Rawle, for defendants.

WASHINGTON, Circuit Justice (charging jury). The written contract was, to deliver four hundred and fifty chests of Young Hyson tea, of the first chop, at thirty-seven tales the pichol. If that quantity and quality could not be procured at the Canton market, the plaintiff undertook more than he was able to perform; but this does not excuse him from a claim of damages, for his breach of contract. He should have taken care, before he made the contract, to ascertain his ability to perform it; and in case the state of the market would not enable him to do so, he might have qualified the expressions of the contract. The first question is, was the original written contract put an end to, by the subsequent change as to the quantity and price? It is admitted, that it was not waived by any express agreement. The contract consisted of three particulars, quantity, quality and price. Now it does not follow, that a subsequent agreement to vary the price, or quantity, or both, does, necessarily, dispense with the obligation in respect to quality. Under circumstances, it may do so,

but it is at most an implication; and the evidence should be such as to show, that the parties intended to dispense with the same. In this case, it is proved by the supercargoes, that they did not intend to do away with the contract. But if this was the effect of the subsequent agreement, still the plaintiff was bound by his promise, to furnish teas, on which he would not be ashamed to put his chop; and if the jury are of opinion these words do not import teas of the first quality, conformable with the terms of the contract, they cannot mean teas of an inferior quality, and such as it is proved were brought to the Philadelphia market. Upon this point, however, the jury must judge. Upon the whole, if they are of opinion, under all the circumstances, that the original contract was intended to have been given up; still, if the supercargoes were in the power of the plaintiff, and found it necessary to yield to imposition, in order to obtain a cargo at all, and a clearance from Canton; the defendants ought not to be bound, to receive teas of an inferior quality to what was stipulated to be delivered. If the jury should be of opinion, that the teas furnished, were not agreeable to the contract, and were inferior to other teas of the agreed quality; the difference will furnish the rate of damages, to be applied to the first cost. They will calculate interest, on the balance due on the notes to this day; and then deduct from it, the sum to which, by the above rule, the defendants are entitled, for the plaintiff's breach of contract.

Verdict for 1647 dolls. 55 cts.

See Gilpins v. Consequa [Case No. 5,452]; Willings v. Consequa [Id. 17,766].

[A new trial was subsequently granted. Case No. 18,190.]